## Smith v. Westpfahl, Director of Public Safety

*J. Julius Levy*, for plaintiff.

*Alexander S. Gorney* and *Jerome K. Barrett*, for defendant.

EAGEN, J., December 27, 1944.—This action is a bill in equity to restrain the Director of Public Safety of

the City of Scranton from enforcing a zoning ordinance passed on August 25, 1924, by the city council. By virtue of this ordinance, the city was divided into various designated areas: "A" zone was designated for residential purposes; "B" zone for residential, with certain retail commerce, excluding a public garage, or truck and automobile repair and service station; "C" zone is designated for suburban property; "D" zone is designated for commercial purposes, including public garages; and "E" zone is designated for industrial purposes.

Plaintiff and his wife, residents of the City of Scranton, are the owners as tenants by the entireties of the property which is the subject of this dispute and which is located at 1429-1435 Capouse Avenue, and is within the area designated as the "B" zone.

For many years prior to the enactment of the zoning ordinance, plaintiff's building was used and occupied as an automobile and truck display room, repair and service station and public garage. On June 15, 1944, plaintiff rented the second floor of the building to one Samuel Passman for a term of one year to engage in the manufacture of ladies' aprons. In April 1943 plaintiff leased the first floor of the building for a period of two years to a firm (Paul E. Brandwene Manufacturing Company) engaged in the manufacture of baby high-chairs. After complaint filed by certain neighbors, defendant, acting in his official capacity, notified the tenants to desist manufacturing in the building and caused a warrant to issue charging a violation of the penal clause of the ordinance. Thereupon this bill in equity was filed with accompanying affidavits to restrain defendant from interfering with plaintiff's use of the building as outlined above. The court awarded a preliminary injunction and also granted a rule to show cause why the preliminary injunction should not be dissolved. After answer filed, a hearing on this rule was held and the issue now before the court is the

continuation or dissolving of the injunction, pending a final hearing.

Section 8 of the zoning ordinance provides as follows:

"Uses in 'B' zones. In the 'B' zones no building, structure or premises shall be used, and no building or structure shall be erected or altered which is arranged or intended or designed to be used, except for the following purposes or uses:

"(a) Any use or purpose permitted in the 'A' Zones. (b) Retail stores for the sale of food products, wearing apparel, drugs, confectionery, tobacco and general merchandise for local neighborhood use. (c) Telephone central offices. (d) Automobile service stations. (e) Theatres and motion picture houses. (f) Laundries. (g) Dairies. (h) Shops for personal service, such as barber shops, shoe shining and tailoring. (i) Studios."

Therefore, when the ordinance went into effect the premises involved were devoted to a "nonconforming use" since they were used as an automobile and truck display room, public garage and also as an automobile repair and service station. Section 1 of the ordinance defines a "nonconforming use" to be as follows:

"A use of property that does not agree with the regulations applicable to the zone in which it is situate."

An automobile service station is permissible in a "B" zone but not an automobile and truck display room nor a public garage and repair shop. However, under the law and the ordinance the owner could have continued to use the premises for the same purposes existing at the time the ordinance was enacted. They were "nonconforming uses" which the ordinance permitted to continue. Its use for such purposes was saved by section 39 of the ordinance, which provides as follows:

"Nothing in this ordinance contained shall be construed to require any change in any existing structure or premises or in the use thereof, nor in any building actually under construction at the date of the passage of the ordinance."

Since the use of the building has been changed, we must examine other provisions of the ordinance to see if such changes were permissible. Section 22 provides as follows when there is a change in use:

"Change of use. No buildings, structures or premises devoted to a non-conforming use at the date of the passage of this ordinance shall be re-constructed, altered, added to, or used for any other non-conforming use except one of a similar class, and in case such building, structure, or premises ceases to be devoted to such non-conforming use, except as a result of vacancy it shall not thereafter be reconstructed, altered, added to, or used for any non-conforming use."

Therefore, as we read this particular section, since the building was devoted to a "nonconforming use" at the date of the passage of the ordinance, it could be continued in "a nonconforming use *of a similar class*". We construe the words "of a similar class" to mean a similar class in that zone. Further examination of the ordinance discloses that a public garage comes under class (*g*) in zone "D". The clause dealing with zone "D" provides as follows:

"In the 'D' zones, no building, structure or premises shall be used and no building or structure shall be erected or altered which is arranged, intended or designed to be used except for the following uses or purposes:

"(*a*) Any use or purpose permitted in the 'A' or 'B' zones. (*b*) Banks and office buildings. (*c*) Wholesale and retail stores. (*d*) Restaurants and hotels. (*e*) Undertaking establishments. (*f*) Laboratories. (*g*) Public garages. (*h*) Places of public entertainment, such as bowling alleys, pool rooms, shooting galleries. (*i*) Billboards and signs and other structures designed primarily for advertising purposes and complying with other sections of this ordinance. (*j*) Manufacturing establishments other than those for the working or preparing of metal, stone, coal, wood, or glass, and not

including power houses, or structures for the generation of electricity, steam or gas."

The issue ultimately, therefore, resolves itself into one of fact or a determination of whether or not the use for which the building is now being utilized comes within item (*j*) of the above section, namely, "manufacturing establishments other than those for the preparing of metal, stone, coal, wood or glass".

We have carefully examined the record and have also had the benefit of a personal visit to the premises and a first-hand examination of everything in connection therewith. We conclude that the second floor thereof in being used as an apron manufacturing establishment is legal and is a "nonconforming use of a similar class" which in view of all the circumstances cannot be held to be a violation of the ordinance involved. However, the manufacturing plant on the first floor of the building is in a different class and under the terms of the ordinance could be operated only in an area designated as zone "E". Defendant, therefore, is well within his rights in ordering this particular use of the building to cease. In view of the fact that this use of the building was permitted to continue and to establish itself for many months before any complaint was forthcoming, we urge that the common-sense attitude prevail and a reasonable or limited time be permitted for the transfer of this establishment to a new, permissible location.

Wherefore, December 27, 1944, it is ordered and directed that the preliminary injunction awarded by the court in the above-entitled case on July 24, 1944, be continued insofar as it applies to the apron manufacturing plant on the second floor of plaintiff's building; however, it is ordered dissolved as to the baby chair manufacturing plant operated on the first floor thereof. The issue is directed to be listed for final hearing on January 15, 1945.